UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VIDYARTIE GANESH,

Plaintiff,

-against-

NYPD POLICE OFFICER WILLIAM CLEMENS,
POLICE OFFICER PATRICK FITZMAURICE,
POLICE OFFICER SGT JOHN MCCORMICK, POLICE
OFFICER LT. SIMON, POLICE OFFICER JOHN AND
JANE DOES; JOHN AND JANE DOE STATE
PROSECUTOR, DARA E. MCCANTS, THE CITY OF
NEW YORK, THE LEGAL AID SOCIETY, POLICE
OFFICER LOUIS RABIN, and POLICE OFFICER
BRENDAN LANGENFELD,

Defendants.

**DEFENDANTS CITY OF NEW YORK, OFFICER
CLEMENS, OFFICER FITZMAURICE,
SERGEANT MCCORMICK, LIEUTENANT
DARNELL, OFFICER RABIN AND OFFICER
LANGENFELD'S MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

***MURIEL GOODE-TRUFANT***
Acting Corporation Counsel of the City of New York

*Attorney for Defendants City of New York, Clemens,
Fitzmaurice, McCormick, Simon, Rabin and Langenfeld
100 Church Street
New York, New York 10007*

*Of Counsel: Joseph Zangrilli
Tel: (212) 356-2657
Matter No. 2022-064792*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iv

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

LEGAL STANDARD........................................................................................... 3

ARGUMENT

      POINT I

            PLAINTIFF'S OWN AMENDED COMPLAINT ACKNOWLEDGES THE OFFICERS HAD PROBABLE CAUSE TO ARREST AND PROSECUTE HIM ....................................................................4

            A.  There Was Probable Cause To Arrest Plaintiff Based on Statements of the Complaining Victim. ...........................................................................5

            B.  Plaintiff Could Not Be Falsely Arrested by Officers Langenfeld and Rabin Because He Was Already in Police Custody. ...........................................7

      POINT II

            PROBABLE CAUSE EXISTED TO PROSECUTE PLAINTIFF....................................................8

      POINT III

            THE INDIVIDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ...............................................................10

      POINT IV

            PLAINTIFF'S EXCESSIVE FORCE CLAIM LACKS SUFFICIENT DETAIL ...........................................12

            A.  The Facts in the Amended Complaint Are Too Vague to Allege an Excessive Force Claim......................................12

            B.  Plaintiff's Handcuffing Claim Fails As a Matter of Law ...........................................................13

POINT V

    PLAINTIFF'S AMENDED COMPLAINT
    ACKNOWLEDGES HE WAS PROVIDED
    WITH TIMELY MEDICAL TREATMENT..........................................14

    A. The Plaintiff's AC Does Not Provide Factual
       Specificity to Support That the Alleged Delay
       in Medical Care Was Sufficiently Serious........................................15

    B. Notwithstanding Plaintiff's Beliefs to the
       Contrary, The AC Evidences that He Received
       Reasonable Medical Treatment on April 28,
       2019..................................................................................................17

POINT VI

    PLAINTIFF HAS FAILED TO PLEAD A
    MUNICIPAL LIABILITY CLAIM AND ALSO
    FAILS FOR LACK OF AN UNDERLYING
    CONSTITUTIONAL VIOLATION........................................................19

    A. Plaintiff Does Not Demonstrate a Practice So
       Persistent that it Constitutes a Custom or
       Usage.................................................................................................20

    B. Plaintiff Does Not Plausibly Allege a Failure to
       Train..................................................................................................21

POINT VII

    THE AMENDED COMPLAINT FAILS TO
    PLEAD A DENIAL OF RIGHT TO FAR TRIAL
    CLAIM.................................................................................................22

POINT VIII

    THE AMENDED COMPLAINT FAILS TO
    STATE A CONDITIONS OF CONFINEMENT
    CLAIM.................................................................................................23

POINT IX

        FAILURE TO INTERVENE CLAIM FAILS
        BECAUSE EACH DEFENDANT IS ALLEGED
        TO PARTICIPATE IN THE CONSTITUTIONAL
        VIOLATION....................................................................................24

POINT X

        PLAINTIFF FAILS TO ALLEGE LABOR AKIN
        TO SLAVERY......................................................................................25

POINT XI

        THE AMENDED COMPLAINT FAILS TO
        ALLEGE PERSONAL INVOLVEMENT FOR
        SEVERAL DEFENDANTS ...............................................................26

        A. Plaintiff Cannot Establish Any Personal
           Involvement for Defendants McCormick and
           Simon. ...........................................................................................26

        B. Plaintiff Cannot Allege Personal Involvement
           for Officers Rabin and Langenfeld for Denial
           of Fair Trial Claim .......................................................................27

CONCLUSION............................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**                                                        **Pages**

Albert v. City of New York,
17 CV 3957 (ARR) (SMG), 2018 U.S. Dist. LEXIS 179576
2018 WL 5084824 (E.D.N.Y. Oct. 18, 2018)............................................................3

Aquino v. City of New York,
16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
(S.D.N.Y. Jan. 25, 2017)............................................................................................19

Arroyo v. City of New York,
683 F. App'x 73 (2d Cir. 2017) .................................................................................13

Ashcroft v. al-Kidd,
563 U.S. 731 (2011).....................................................................................................11

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..........................................................................................3, 20, 27

Ashley v. City of New York,
992 F.3d 128 (2d Cir. 2021)........................................................................................5

Barnes v. Ross,
926 F. Supp. 2d 499 (S.D.N.Y. 2013)........................................................................15

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).....................................................................................................3

Bell v. Drakeford,
18-CV-2225 (JPO) 2020 U.S. Dist. LEXIS 63443,
2020 WL 1819879 (S.D.N.Y. Apr. 10, 2020)............................................................13

Betts v. Shearman,
12 Civ. 3195 (JPO), 2013 U.S. Dist. LEXIS 11139,
2013 WL 311124 (S.D.N.Y. Jan. 23, 2013) ..............................................................10

Black v. Coughlin,
76 F.3d 72 (2d Cir. 1996)............................................................................................26

Brock v. Wright,
315 F.3d 158 (2d Cir. 2003)........................................................................................15

Busch v. Cnty. of Erie,
20-CV-1515, 2022 U.S. Dist. LEXIS 83539,
2022 WL 1460022 (W.D.N.Y. May 9, 2022).............................................................26

**Cases**                                                              **Pages**

Caiozzo v. Koreman,
   581 F.3d 63 (2d Cir. 2009)......................................................................23

Cerrone v. Brown,
   246 F.3d 194 (2d Cir. 2001)....................................................................11

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002)......................................................................4

Chance v. Armstrong,
   143 F.3d 698 (2d Cir. 1998)....................................................................17

City & Cty. of San Francisco v. Sheehan,
   135 S. Ct. 1765 (2015)...........................................................................11

City of Canton v. Harris,
   489 U.S. 378 (1989)...............................................................................20

City of Los Angeles v. Heller,
   475 U.S. 796 (1986)...............................................................................19

Coleman v. City of New York,
   688 F. App'x. 56 (2d Cir. 2017) ...............................................................8

Connick v. Thompson,
   563 U.S. 51 (2011).................................................................................21

Cugini v. City of New York,
   941 F.3d 604 (2d Cir. 2019).............................................................12, 13

Curley v. Village of Suffern,
   268 F.3d 65 (2d Cir. 2001)........................................................................5

Darnell v. Pineiro,
   849 F.3d 17 (2d Cir. 2017)................................................14, 16, 17, 24

DiFolco v. MSNCB Cable L.L.C.,
   622 F.3d 104 (2d Cir. 2010)......................................................................4

Dillon v. City of New York,
   No. 12 Civ. 7113 (LAP), 2013 U.S. Dist. LEXIS 183409,
   2013 WL 6978959 (S.D.N.Y. Nov. 18, 2013).........................................24

Dunham v. City of New York,
   295 F. Supp. 3d 319 (S.D.N.Y. Mar. 13, 2018).......................................27

**Cases**                                                                                            **Pages**

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)......................................................................................6

Farmer v. Brennan,
    511 U.S. 825 (1994).............................................................................................15

Feliciano v. Anderson,
    No. 15 Civ. 4106 (LTS) (JLC), 2017 U.S. Dist. LEXIS 47893,
    2017 WL 1189747 (S.D.N.Y. Mar. 30, 2017) ............................................15, 16, 17

Ford v. Nassau County Exec.,
    41 F. Supp. 2d 392 (E.D.N.Y. 1999) ....................................................................26

Gantt v. Horn,
    09 Civ. 7310 (PAE), 2013 U.S. Dist. LEXIS 32497,
    2013 WL 865844 (S.D.N.Y. Mar. 8, 2013) ...........................................................16

Gaston v. City of New York,
    851 F. Supp. 2d 780 (S.D.N.Y. 2012)................................................................. 5-6

Goldstein v. Pataki,
    516 F.3d 50 (2d Cir. 2008).....................................................................................3

Goncalves v. Reynolds,
    198 F. Supp. 2d 278 (W.D.N.Y. 2001) .............................................................7, 22

Gonzalez v. Hirschman,
    15-CV-810-GHW, 2016 U.S. Dist. LEXIS 10228,
    2016 WL 354913 (S.D.N.Y. Jan. 28, 2016) .........................................................13

Graham v. Connor,
    490 U.S. 386 (1989).............................................................................................12

Grytsyk v. Morales,
    527 F. Supp. 3d 639 (S.D.N.Y. Mar. 22, 2021)..............................................13, 14

Harper v. City of New York,
    424 F. App'x 36 (2d Cir. 2011) ..............................................................................3

Harris v. Binghamton Police Dep't,
    22-CV-0977 (BKS/ML), 2023 U.S. Dist. LEXIS 13190,
    2023 WL 417897,
    report and recommendation adopted in whole
    (N.D.N.Y. Jan. 26, 2023) ......................................................................................9

**Cases**                                                                                          **Pages**

Harris v. Mills,
   572 F.3d 66 (2d Cir. 2009)...................................................................................3

Jackson v. City of New York,
   939 F. Supp. 2d 219 (E.D.N.Y. 2013) ...................................................................25

Jackson v. Nassau Cty.,
   552 F. Supp. 3d 350 (E.D.N.Y. July 28, 2021)........................................................25

Jaegly v. Couch,
   439 F.3d 149 (2d Cir. 2006)................................................................................5, 7

Johnson v. Constantellis,
   221 F. App'x 48 (2d Cir. 2007) ...........................................................................8

Jovanovic v. City of New York,
   486 F. App'x 149 (2d Cir. 2012) .........................................................................22

Krause v. Bennett,
   887 F.2d 362 (2d Cir. 1989)...............................................................................5, 6

LeVine v. N.Y. State Police,
   21-cv-503 (GLS/DJS), 2022 U.S. Dist. LEXIS 173677,
   2022 WL 4465588 (N.D.N.Y. Sep. 26, 2022) .........................................................9

Littlejohn v. City of New York,
   795 F.3d 297 (2d Cir. 2015)...............................................................................28

Livermore v. City of New York,
   08 Civ. 4442 (NRB), 2011 U.S. Dist. LEXIS 4763
   2011 WL 182052 (S.D.N.Y. Jan. 13, 2011) ...........................................................3

Lloyd v. City of New York,
   246 F. Supp. 3d 704 (S.D.N.Y. 2017).............................................................15, 16

Longo v. Ortiz,
   15Civ. 7716 (VEC), 2016 U.S. Dist. LEXIS 131558,
   2016 WL 5376212 (S.D.N.Y. Sept. 26, 2016)........................................................23

Marhone v. Cassel,
   16 Civ. 4733 (NSR), 2022 U.S. Dist. LEXIS 173496,
   2022 WL 4468056 (S.D.N.Y. Sept. 26, 2022)........................................................26

Martinez v. Simonetti,
   202 F.3d 625 (2d Cir. 2000)........................................................................5, 6, 22

**Cases**          **Pages**

McCoy v. Goord,
  255 F. Supp. 2d 233 (S.D.N.Y. 2003)......................................................................27

McIntosh v. City of New York,
  722 F. App'x 42 (2d Cir. 2018) ................................................................................6

Monell v. N.Y.C. Dep't of Soc. Servs.,
  436 U.S. 658 (1978)..................................................................................................19

Morgan v. County of Nassau,
  720 F. Supp. 2d 229 (E.D.N.Y. 2010) ....................................................................25

Muhmmaud v. Murphy,
  632 F. Supp. 2d 171 (D. Conn. 2009)......................................................................26

Mullenix v. Luna,
  577 U.S. 7 (2015)......................................................................................................11

Myers v. Patterson,
  819 F.3d 625 (2d Cir. 2016)......................................................................................11

Nardoni v. City of New York,
  331 F. Supp. 3d 116 (S.D.N.Y. 2018)........................................................................7

V.A. ex. rel. O.A. v. City of N.Y.,
  22 Civ. 773 (LJL), 2023 U.S. Dist. LEXIS 171592
  2023 WL 6254790 (S.D.N.Y. Sep. 26, 2023).............................................................8

Obilo v. City Univ. of N.Y.,
  01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886
  2003 WL 715749 (E.D.N.Y. Feb. 28, 2003).............................................................10

Omar v. City of New York,
  13 Civ. 8264 (NRB) 2015 U.S. Dist. LEXIS 4470
  2015 WL 178774 (S.D.N.Y. Jan. 5, 2015) ................................................................6

Padavan v. United States,
  82 F.3d 23 (2d Cir. 1996)............................................................................................4

Palmer v. City of New York,
  564 F Supp. 3d 221 (E.D.N.Y. Sep. 30, 2021) .......................................................20

Papineau v. Parmley,
  465 F.3d 46 (2d Cir. 2006).......................................................................................12

**Cases**                                                                                  **Pages**

Pembaur v. City of Cincinnati,
   475 U.S. 469 (1986) (plurality opinion) ................................................19

Pierre v. City of N.Y.,
   05 CV 5018 (JFB)(KAM), 2007 U.S. Dist. LEXIS 60707,
   2007 WL 2403573 (E.D.N.Y. Aug. 17, 2007)...........................................6

Provost v. City of Newburgh,
   262 F.3d 146 (2d Cir, 2001).....................................................................28

Randle v. Alexander,
   960 F. Supp. 2d 457 (S.D.N.Y. 2013).......................................................26

Reynolds v. Giuliani,
   506 F.3d 183 (2d Cir. 2007).....................................................................21

Richardson v. Goord,
   347 F.3d 431 (2d Cir. 2003).....................................................................27

Rivera v. Doe,
   16 Civ. 8809 (PAE) (BCM), 2018 U.S. Dist. LEXIS 31813,
   2018 WL 1449538 (S.D.N.Y. Feb. 26, 2018)...........................................18

Rivera v. Molina,
   23 Civ. 4128 (LTS) 2023 U.S. Dist. LEXIS 130887,
   2023 WL 4847865 (S.D.N.Y. July 27, 2023) ...........................................24

Rodriguez v. Cnty of Nassau,
   18 CV 3845 (JMA) (JMW), 2023 U.S. Dist. LEXIS 53173,
   2023 WL 2667076 (E.D.N.Y. Mar. 23, 2023).........................................12

Rounseville v. Zahl,
   13 F.3d 625 (2d Cir. 1994)..........................................................................8

Salahuddin v. Goord,
   467 F.3d 263 (2d Cir. 2006).....................................................................15

Sankar v. City of New York,
   867 F. Supp. 2d 297 (E.D.N.Y. 2012) ........................................................7

Savino v. City of New York,
   331 F.3d 63 (2d Cir. 2003)..........................................................................8

Singer v. Fulton County Sheriff,
   63 F.3d 110 (2d Cir. 1995)..........................................................................5

**Cases**                                                                      **Pages**

Slade v. Corr. Health John Doe,
    23 Civ. 1419 (LTS) 2023 U.S. Dist. LEXIS 42071,
    2023 WL 2479793 (S.D.N.Y. 2023).........................................................................18

Smith v. Carpenter,
    316 F.3d 178 (2d Cir. 2003)..............................................................15, 16, 17

Smith v. Tobon,
    529 F. App'x 36 (2d Cir. 2013) .........................................................................8

Smith v. Westchester County,
    769 F. Supp. 2d 448 (S.D.N.Y. 2011).............................................................4

Sullivan v. City of New York,
    17 Civ. 3779 (KPF), 2018 U.S. Dist. LEXIS 114366,
    2018 WL 3368706 (S.D.N.Y. July 10, 2018) ..............................................13

Taylor v. Vt. Dep't of Educ.,
    313 F.3d 768 (2d Cir. 2022)..............................................................................4

Tortora v. City of New York,
    15 CV 3717 (MKB), 2019 U.S. Dist. LEXIS 231989
    (E.D.N.Y. Mar. 30, 2019).................................................................................9

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010)..............................................................................12

Triano v. Town of Harrison,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012).............................................................22

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996)..............................................................................5

White v. Pauly,
    580 U.S. 73 (2017)...........................................................................................11

Williams v. Amtrak,
    830 F. App'x 46 (2d Cir. 2020) ......................................................................12

Williams v. City of New York Dep't of Corr.,
    19 Civ. 9528 (ER) 2020 U.S. Dist. LEXIS
    121455 2020 WL 3893929 (S.D.N.Y. July 10, 2020) ................................18

Williams v. Time Warner Inc.,
    440 Fed. Appx. 7 (2d Cir. 2011).......................................................................4

**Cases**                                                                        **Pages**

Wray v. City of New York,
   490 F.3d 189 (2d Cir. 2007).................................................................................21

Wright v. City of New York,
   18 Civ. 10769 (DLC), 2019 U.S. Dist. LEXIS 110719
   2019 WL 2869066 (S.D.N.Y. July 2, 2019) ........................................................12

Wright v. Smith,
   21 F.3d 496 (2d Cir. 1994)...........................................................................26, 27

**Statutes**

42 U.S.C. § 1983 ...............................................................1, 5, 7, 8, 14, 19, 21, 26, 27

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 3, 4, 10, 29

PL § 245.00 .....................................................................................................................11

## PRELIMINARY STATEMENT

Plaintiff, Vidyartie Ganesh, brings this lawsuit and sets forth causes of action including false arrest, malicious prosecution and a myriad of other claims pursuant to 42 U.S.C. § 1983 and New York state law stemming from his arrest on April 27, 2019. Plaintiff's Amended Complaint ("AC") filed on August 8, 2024, provides factual specificity that act to defeat his claims. Plaintiff does this by acknowledging the existence of a complaining witness, and illustrating that he was lawfully arrested and prosecuted based on probable cause.

Defendants City of New York, Officer William Clemens, Officer Patrick Fitzmaurice, Sergeant John McCormick, Lieutenant Darnell Simon, Officer Louis Rabin and Officer Brendan Langenfeld ("Defendants") submit this memorandum of law in support of their fully dispositive Motion to Dismiss the AC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff fails to state a claim upon which relief can be granted. Specifically: (I) Plaintiff's AC establishes that there was probable cause for his arrest based on the statement of a complaining witness; (II) probable cause existed to prosecute Plaintiff; (III) the individual Defendants are entitled to qualified immunity based on the facts plead; (IV) Plaintiff's excessive force claim lacks sufficient detail; (V) Defendants did not deny Plaintiff medical care; (VI) Plaintiff has failed to allege claim of municipal liability; (VII) Plaintiff's denial of fair trial claim fails; (VIII) Plaintiff's denial of fair trial claim lacks plausibility; (IX) Plaintiff failure to intervene fails because the AC alleges all Defendants were involved in the constitutional violation; (X) Plaintiff does not show any labor condition akin to slavery; and (XI) Plaintiff does not allege personal involvement for several defendants.

## **STATEMENT OF FACTS**

In his Amended Complaint, Plaintiff indicates he was inside a Home Depot on April 27, 2019.[1]  (See Amended Complaint, annexed to the Declaration of Joseph Zangrilli, dated August 30, 2024 (hereinafter "Zangrilli Decl.") as Exhibit "A" at 2.)  At the same time, co-defendant and civilian, Dara McCants, called the police regarding the Plaintiff.  (Id.)  Dara McCants told the police that she had observed Plaintiff expose himself in public.  (See Dara McCants Supporting Deposition, annexed to Zangrilli Decl. as Exhibit "B".)  Prior to April 27th, Plaintiff had never met or interacted with Ms. McCants.  (See Exhibit A at 35.)  Officers William Clemens and Patrick Fitzmaurice arrived on scene at the Home Depot.  (Id. at 36.)  Officers Clemens and Fitzmaurice arrested Plaintiff when they "dishonestly relied on a false witness" referring to Ms. McCants' account.  (Id. at 39.)  Plaintiff further asserts that Officers Clemens and Fitzmaurice "attacked" Plaintiff while arresting him.  (Id. at 19.)  Plaintiff was taken to the 113th Precinct and shackles were placed on his feet (Id. at 37.)

Following his arrest on April 27th, Plaintiff was transported to Jamaica Hospital in handcuffs.  (Id. at 37.)  While there, Plaintiff was seen by a nurse who "unlawfully" took Plaintiff's blood.  (Id. at 38.)  At an unknown time, Plaintiff was returned to the 113th Precinct.  (See id. at 35.)  On April 28, 2019, Officers Langenfeld and Detective Louis Rabin "arrested" Plaintiff while he was inside the 113th Precinct cell.  (Id. at 6.)  The Officers took Plaintiff out of his cell and placed Plaintiff in the back of a car.  (Id. at 6.)  Instead of transporting Plaintiff to Jamaica Hospital as requested, the officers took him to see a "Jailhouse nurse."  (Id. at 6-7.)  Unidentified officers then proceeded to place Plaintiff in a cell in Central Booking for several hours.  (Id. at 7.)  Following the arrest, Ms. McCants disappeared after signing a "false witness affidavit." (Exhibit

---

[1] Due to the inconsistent and contradictory page numbering in the Amended Complaint, Defendants refer to the ECF pagination for their citations.

A at 33, 35-36; Exhibit B; <u>See</u> McCants Supporting Deposition Email annexed to Zangrilli Decl. as Exhibit "C".)  A New York State prosecutor brought a "false" charge against plaintiff.  (Exhibit A at 31.)  Plaintiff appeared at Queens Criminal Court on two occasions in connection with these charges before they were dismissed.  (<u>Id</u>. at 33.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Harper v. City of New York</u>, 424 F. App'x 36, 38 (2d Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007))). In applying this standard of facial plausibility, the court takes all "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor."  <u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).  However, courts do not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  <u>Iqbal</u>, 556 U.S. at 677.

"[T]he court is not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Albert v. City of New York</u>, 17 CV 3957 (ARR) (SMG), 2018 U.S. Dist. LEXIS 179576, 2018 WL 5084824,  at *10 (E.D.N.Y. Oct. 18, 2018) (quoting <u>Iqbal</u>, 556 U.S. at 678). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  <u>Twombly</u>, 550 U.S. at 555.  Consistent with the holdings in <u>Iqbal</u> and <u>Twombly</u>, the Second Circuit has held that a plaintiff must "provide grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008).  In sum, where a plaintiff's allegations are insufficient to "nudge [his] claims across the line from conceivable to plausible, [the] complaint

must be dismissed." <u>Livermore v. City of New York</u>, 08 Civ. 4442 (NRB), 2011 U.S. Dist. LEXIS 4763, 2011 WL 182052 at *14 (S.D.N.Y. Jan. 13, 2011) (quoting <u>Twombly</u>, 550 U.S. at 570).

In deciding a Rule 12(b)(6) motion, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." <u>Williams v. Time Warner Inc.</u>, 440 Fed. Appx. 7, 9 (2d Cir. 2011) (quoting <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2022)). The Second Circuit has noted that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). Further, a court may take judicial notice of documents referenced in, or integral to, the complaint, even if the documents are not annexed to the complaint. See <u>Smith v. Westchester County</u>, 769 F. Supp. 2d 448, 458 n.7 (S.D.N.Y. 2011). A document may be considered, even if not incorporated by reference, if the complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." <u>DiFolco v. MSNCB Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010). A motion to dismiss should be granted where, as here, it is beyond doubt that plaintiff can prove no facts that would entitle him to relief. See <u>Padavan v. United States</u>, 82 F.3d 23, 26 (2d Cir. 1996).

**<u>ARGUMENT</u>**

**POINT I**

**PLAINTIFF'S OWN AMENDED COMPLAINT ACKNOWLEDGES THE OFFICERS HAD PROBABLE CAUSE TO ARREST AND <u>PROSECUTE HIM</u>**

Plaintiff's own factual allegations contained in his AC evidence that there was probable cause to arrest him inside of a Home Depot on April 27, 2019.

4

**A.** **There Was Probable Cause To Arrest Plaintiff Based on Statements of the Complaining Victim.**

Under New York law, to prevail on a claim for false arrest, "a plaintiff must show that (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021) (alteration in original, internal quotation marks omitted). Under § 1983, a claim for false arrest "is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause is a complete defense to a claim for false arrest. See, e.g., Ashley, 992 F.3d at 136. Dismissal of criminal charges is not evidence of a lack of probable cause. Krause v. Bennett, 887 F.2d 362, 370 (2d Cir. 1989) ("Even if Krause had actually gone to trial and been acquitted, that result would have no bearing on the determination of whether probable cause existed to arrest him.").

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006). "When information is received from a putative victim or an eyewitness, probable cause exists, [] unless the circumstances raise doubt as to the person's veracity." See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (citing Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). Further, police officers "are entitled to rely on the victims' allegations that a crime has been committed." See Martinez, 202 F.3d at 634. In this Circuit, "courts have been reluctant to doubt the veracity of a complaining victim based upon the short duration of an encounter or a victim's emotional distress as a result of a crime." See Gaston v.

City of New York, 851 F. Supp. 2d 780, 790 (S.D.N.Y. 2012) (citing Pierre v. City of N.Y., No. 05 CV 5018 (JFB) (KAM), 2007 U.S. Dist. LEXIS 60707, 2007 WL 2403573 at *8 (E.D.N.Y. Aug. 17, 2007). Even if officers have knowledge of a complaining victim's "criminal or psychiatric history," that alone is "not enough to destroy probable cause." See Escalera v. Lunn, 361 F.3d 737, 746 (2d Cir. 2004).

Here the AC directly acknowledges that the Defendants arrested Plaintiff based on Ms. McCants account and identification of Plaintiff. (See Exhibit A at 39.) The AC states that Officer Clemens and Officer Fitzmaurice "relied" on Ms. McCants' account to make an arrest. (Id.) Plaintiff's conclusory assertion that the officers improperly believed Ms. McCants over him is of no moment. (See Exhibit A at 35-36) In situations such as this, police officers are permitted to rely on a complaining victim's statements that a crime has been committed. See Martinez, 202 F.3d at 634. Plaintiff may be frustrated that the police officers believed Ms. McCants but the AC does not contain any plausible allegations that the police were aware that Ms. McCants was dishonest. See Omar v. City of New York, 13 Civ. 8264 (NRB), 2015 U.S. Dist. LEXIS 4470, 2015 WL 178774 at * 8-9 (S.D.N.Y. Jan. 5, 2015). Where there are conflicting accounts, officers' "'function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.'" McIntosh v. City of New York, 722 F. App'x 42, 45 (2d Cir. 2018) (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)).

Plaintiff does not put forth any facts that would make Officers Clemens and Fitzmaurice doubt Ms. McCants' veracity. Rather, the AC contains unsupported and conclusory allegations of fraud. (Exhibit A at 35-36.) Plaintiff's assertion that he had never seen Ms. McCants before his arrest does not undermine that Ms. McCants reported to the police that she observed Plaintiff engaged in lewd and unlawful activity outside of the Home Depot. (Exhibit A at 35.) There is no

prerequisite for Plaintiff to have had a direct interaction with Ms. McCants in order for her to report that she witnessed him committing a crime. In fact, courts in this circuit have found that a prior relationship can impact a witnesses' credibility when making a report to the police. Sankar v. City of New York, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (A complaining witnesses' reliability could be called into question when an arresting officer knew of a "bitter prior relationship" between the witness and the accused.) Plaintiff can only point to Ms. McCants' subsequent "disappearance" as evidence that she was a "false witness." (See Exhibit A at 39.) However, probable cause for false arrest is assessed at *the time of the arrest*. Jaegty v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). The fact that Ms. McCants was later unavailable is irrelevant to the determination that probable cause existed at the time of Plaintiff's arrest. Therefore, as the AC makes clear, at the time of Plaintiff's arrest, probable cause existed to arrest him.

**B.    Plaintiff Could Not Be Falsely Arrested by Officers Langenfeld and Rabin Because He Was Already in Police Custody.**

Plaintiff alleges that he was arrested for a second time by Officers Langenfeld and Rabin from a cell while he was at the 113th Precinct. (Exhibit A at 5.) To the extent Plaintiff is asserting false arrest claims against Officers Langenfeld and Rabin, this claim is conclusory and contradictory. The AC makes clear that on April 27, 2019, following his arrest, Plaintiff was brought to the 113th Precinct. (Exhibit A at 37.) It is well-established that a plaintiff does not have a claim for false arrest under § 1983 if, at the time of his arrest, he was already in custody. Nardoni v. City of New York, 331 F. Supp. 3d 116, 122 (S.D.N.Y. 2018); Goncalves v. Reynolds, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) ("Since plaintiff would have been in custody anyway, he cannot state a claim for false arrest.") Plaintiff does not dispute that he was already in custody when he encountered Officers Langenfeld and Rabin. (Exhibit A at 4-5.) Moreover, Plaintiff asserts no facts to support his claims that these officers falsely arrested him. Therefore, Plaintiff's

false arrest claims against Officers Langenfeld and Rabin are not properly pled and should be dismissed.

## POINT II

### PROBABLE CAUSE EXISTED TO PROSECUTE PLAINTIFF

Probable cause existed at the time of Plaintiff's arrest, and persisted through to the time of his prosecution. As an initial matter, to sustain a claim for malicious prosecution under § 1983, a plaintiff must demonstrate: (1) the defendant initiated or continued a criminal proceeding against him; (2) the proceeding terminated in his favor; (3) the defendant acted without probable cause; (4) the defendant acted with malice; and (5) plaintiff suffered a post-arraignment deprivation of liberty that rises to level of constitutional seizure." See Coleman v. City of New York, 688 F. App'x. 56, 57-58 (2d Cir. 2017). As in the false arrest context, probable cause is a complete defense to a malicious prosecution claim. Smith v. Tobon, 529 F. App'x 36, 38 (2d Cir. 2013) (citing Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotation marks and citations omitted). In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. See e.g., Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994); V.A. ex. rel. O.A. v. City of N.Y., 22 Civ. 773 (LJL), 2023 U.S. Dist. LEXIS 171592, 2023 WL 6254790 at *26 (S.D.N.Y. Sep. 26, 2023).

While the standard for probable cause as it relates to a claim for malicious prosecution is 'slightly higher' than the false arrest standard, an identification of the alleged perpetrator by a

victim and a description of the conduct is generally sufficient to support probable cause and defeat a malicious prosecution claim, absent facts dissipating probable cause that are discovered subsequent to the arrest.  Tortora v. City of New York, 15-CV-3717 (MKB), 2019 U.S. Dist. LEXIS 231989, at *56 (E.D.N.Y. Mar. 30, 2019).  As previously discussed, probable cause existed at the time of Plaintiff's arrest because of Ms. McCants' account to the police and her identification of Plaintiff.  The AC sets forth no intervening fact that dissipated the probable cause.  In fact, following Plaintiff's arrest, the DA's office contacted Ms. McCants in order to obtain a supporting deposition.  (See Exhibit C.) After a first attempt, Ms. McCants signed a supporting deposition, under oath and penalty of law.  (See Exhibit B.)  Courts in this Circuit have relied on supporting depositions to find probable cause.  Harris v. Binghamton Police Dep't, 22-CV-0977 (BKS/ML), 2023 U.S. Dist. LEXIS 13190, 2023 WL 417897 at *10 n. 5 report and recommendation adopted in whole (N.D.N.Y. Jan. 26, 2023) ("In the alternative, I recommend dismissal of Plaintiff's malicious prosecution claim because probable cause existed for commencing the proceeding based on the witness statement of Ryan Milazzo, which was attached to the Complaint.")  Plaintiff's conclusory allegations that the supporting deposition is false is not enough to vitiate probable cause.  LeVine v. N.Y. State Police, 21-cv-503 (GLS/DJS), 2022 U.S. Dist. LEXIS 173677, 2022 WL 4465588 (N.D.N.Y. Sep. 26, 2022) (Court dismissed malicious prosecution claim because plaintiff's allegations defendants fabricated the supporting deposition were entirely conclusory.) As such, probable cause existed at the time of Plaintiff's prosecution.

To the extent plaintiff purports that Ms. McCants' Supporting Deposition (Exhibit B) and attempted electronically signed deposition (Exhibit C) is "material outside of the pleadings," and therefore, is not properly considered on a motion to dismiss, this argument fails.  To the contrary, Ms. McCants' attempted and Supporting Deposition is incorporated by reference into the

pleadings. See Betts v. Shearman, 12 Civ. 3195 (JPO), 2013 U.S. Dist. LEXIS 11139, 2013 WL 311124 at *9 (S.D.N.Y. Jan. 23, 2013) (considering domestic incident report and accusatory instrument for plaintiff's prosecution as "integral to [the plaintiff's] Complaint" in deciding motion to dismiss); Obilo v. City Univ. of N.Y., 01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886, 2003 WL 715749 at *13 (E.D.N.Y. Feb. 28, 2003). Here, Plaintiff asserts in the AC that Ms. McCants' allegations against him were false and that he was prosecuted because of her. (See Exhibit A at 31-32; Exhibit B at 1.) Thus, the attempted and Supporting Deposition may properly be considered in deciding a motion to dismiss because it is implicitly referenced in plaintiff's complaint. See Betts, 2013 U.S. Dist. LEXIS 11139, at *9.

Furthermore, the attempted and Supporting Deposition may also be considered in a 12(b)(6) motion because it is central to Plaintiff's allegations. See Obilo, 2003 U.S. Dist. LEXIS 2886 at *14. When a complaint is based on allegations that a plaintiff was falsely accused of a crime, "it should come as no surprise to plaintiff if the documents that initiated those allegations are considered when determining whether to dismiss plaintiff's claims." Id. Plaintiff asserts repeatedly in the AC that Ms. McCants drafted an false affidavit against him. (Exhibit A at 33, 35, 36.) The attempted and Supporting Deposition is not only central to his claim for moving Defendants but also Plaintiff's claims against Defendants McCants and Home Depot. (See id. at 34-35.) Plaintiff's allegations against the defendants hinges on the alleged falsity of these documents and to disregard them ignores the basis of Plaintiff's claim of malicious prosecution.

### POINT III

### THE INDIVIDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

The individual officers had, at a minimum, arguable probable cause for Plaintiff's arrest, and are therefore entitled to qualified immunity. A police officer is entitled to qualified immunity

if "'arguable probable cause' existed-*i.e.*, if 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law.'" Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001). Arguable probable cause exists where "it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met." See Myers v. Patterson, 819 F.3d 625, 633 (2d Cir. 2016). The purpose of qualified immunity is to "give[] government officials breathing room to make reasonable but mistaken judgments" and to protect "all but the plainly incompetent or those who knowingly violate the law." City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)).

Additionally, whether law is clearly established for qualified immunity grounds must be "particularized" to the facts of a given case. See White v. Pauly, 580 U.S. 73, 79 (2017) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.") While qualified immunity "'do[es] not require a case directly on point'" for a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" See id. (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015).

Here there is no question that reasonable officers could disagree on whether the complaining victim – Ms. McCants – and her statement that Plaintiff exposed himself fulfilled the elements of PL 245.00, Public Lewdness. (Exhibit B at 1.) Moreover, reasonable officers could further disagree on whether her subsequent "disappearance" gave rise to circumstances calling into question her veracity. Accordingly, Plaintiff's false arrest and malicious prosecution claim should be dismissed against the individual defendants as they are shielded by qualified immunity.

**POINT IV**

**PLAINTIFF'S EXCESSIVE FORCE CLAIM
LACKS SUFFICIENT DETAIL**

Plaintiff's AC fails to plausibly state a claim for excessive force.  The Fourth Amendment applies to an excessive force claim that "arises in the context of an arrest or investigatory stop of a free citizen."  Graham v. Connor, 490 U.S. 386, 394 (1989).  Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is "objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation."  Papineau v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted).  This objective inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake."  Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).  Critically, "[a] plaintiff must also demonstrate that the officer was made reasonably aware that the force used was excessive."  Williams v. Amtrak, 830 F. App'x 46, 48–49 (2d Cir. 2020) (citing Cugini v. City of New York, 941 F.3d 604, 608 (2d Cir. 2019)).

**A.    The Facts in the Amended Complaint Are Too Vague to Allege an Excessive Force Claim**

Plaintiff's allegations of excessive force are too vague to be sufficient to state a claim. Plaintiff must plead with some specificity what actions an officer took that constituted excessive force.  Wright v. City of New York, 18 CV 10769 (DLC), 2019 U.S. Dist. LEXIS 110719 2019 WL 2869066 at *13-14 (S.D.N.Y. July 2, 2019) (Court dismissed the complaint where plaintiff alleged she was physically abused by officers but did not specify how she was physically abused.); Rodriguez v. Cnty of Nassau, 18 CV 3845 (JMA)(JMW), 2023 U.S. Dist. LEXIS 53173, 2023 WL 2667076 at *23 (Mar. 23, 2023) (Plaintiff's allegations about the "assault" and "attack[]" are too vague and conclusory for a reasonable jury to conclude that any officer used excessive force

against him.)  Here, Plaintiff only states that the officers "attacked" him.  (Exhibit A at 19.)

Plaintiff omits the alleged actions the officers took to cause his alleged injuries in favor of stating

they "used excessive force."  (See id. at 36)  Simply stating that excessive force was used is

insufficient to successfully allege a claim of excessive force.  Bell v. Drakeford, 18-CV-2225

(JPO) 2020 U.S. Dist. LEXIS 63443, 2020 WL 1819879 (S.D.N.Y. Apr. 10, 2020) ("However,

Bell must allege facts that support his excessive force claim rather than simply state that excessive

force was used in a conclusory manner.")  Therefore, Plaintiff's excessive force claims should be

dismissed.

**B.**      **Plaintiff's Handcuffing Claim Fails As a Matter of Law**

To the extent that Plaintiff's excessive force claim is based on tight handcuffing it also

fails.  Regarding tight handcuffing as a type of excessive force, the Second Circuit looks to whether

the arrestee complains about the tightness of his handcuffs "as a significant factor, if not a

prerequisite to liability."  Cugini, 941 F.3d at 616; see also Arroyo v. City of New York, 683 F.

App'x 73, 75 (2d Cir. 2017) (summary order).  Courts in this jurisdiction "'frequently consider (1)

whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's

pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists.'"  Grytsyk v.

Morales, 527 F. Supp. 3d 639, 654 (S.D.N.Y. Mar. 22, 2021) (quoting Gonzalez v. Hirschman,

15-CV-810-GHW, 2016 U.S. Dist. LEXIS 10228, 2016 WL 354913 at *4 (S.D.N.Y. Jan. 28,

2016)).  Additionally, "[i]t is well established in this Circuit that claims of excessive force are not

established by allegations that overly tight handcuffs caused minor, temporary injuries."  Id. at 654

(quoting Sullivan v. City of New York, 17 Civ. 3779 (KPF), 2018 U.S. Dist. LEXIS 114366, 2018

WL 3368706 at *10 (S.D.N.Y. July 10, 2018)).

In Grytsyk, the plaintiff alleged that defendant had "handcuffed [him] so tightly as to

aggravate a pre-existing medical condition of his right hand, causing him an extremely painful

injury and requiring him to seek medical attention." Id. at 654-655. (internal quotation marks and alterations omitted). The Grytsyk Court dismissed the plaintiff's claim because there was "no allegation that [plaintiff] advised the officers of his discomfort, verbally or otherwise, or that he remained handcuffed for an extended period." Id. The Court explained that "threadbare and conclusory allegations of injury, without reference to specific physical injuries, do not suffice as a matter of law." Id.

Here, the AC mentions "tight handcuffs" four times, but does not contain any factual allegations that Plaintiff complained to the officers. (Exhibit A at 19, 37, 38) In fact, the AC contains even less factual detail than the plaintiff's allegations in Grytsyk: plaintiff does not claim to have sought medical attention or that he suffered any physical pain to his hands or wrists. (Id.) Instead, plaintiff's excessive force claim amounts only to "threadbare and conclusory allegations . . . without reference to specific physical injuries." Grytsyk, 527 F. Supp. 3d at 654. Plaintiff's allegations do not constitute an excessive force claim of tight handcuffing and should be dismissed.

## POINT V

### PLAINTIFF'S AMENDED COMPLAINT ACKNOWLEDGES HE WAS PROVIDED WITH TIMELY MEDICAL TREATMENT

Plaintiff's allegation that he was deprived of medical care fails as a matter of law. "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To establish a § 1983 claim for deliberate indifference to serious medical need under the Due Process Clause, "a pretrial detainee must satisfy two prongs": (1) "an 'objective prong' showing that the [deprivation of medical care] w[as] sufficiently serious to constitute [an] objective deprivation[] of the right to due process," and (2) "a 'subjective prong' — perhaps better classified as a 'mens rea

prong' or 'mental element prong' — showing that the [defendant official] acted with at least deliberate indifference" in denying medical care.  Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017).  Plaintiff's allegations regarding the events of April 27, 2019 and April 28, 2019 fail to satisfy either of these prongs.

## A.    The Plaintiff's AC Does Not Provide Factual Specificity to Support That the Alleged Delay in Medical Care Was Sufficiently Serious.

Determining whether an alleged deprivation of medical care is "sufficiently serious" under the first prong of analysis requires two separate inquiries.  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  'The first inquiry is whether the [pretrial detainee] was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required.'"  Barnes v. Ross, 926 F. Supp. 2d 499, 505 (S.D.N.Y. 2013) (quoting Salahuddin, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 844-47 (1994))).  "The second inquiry 'asks whether the inadequacy in medical care is sufficiently serious.'"  Feliciano v. Anderson, No. 15 Civ. 4106 (LTS) (JLC), 2017 U.S. Dist. LEXIS 47893, 2017 WL 1189747, at *10 (S.D.N.Y. Mar. 30, 2017) (quoting Salahuddin, 467 F.3d at 280).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003).  Instead, the determination "must be tailored to the specific circumstances of each case." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).

Here, the AC admits Plaintiff was taken to Jamaica Hospital on the date of his arrest.  (See Exhibit A at 19.)  Thus, he cannot allege he was "deprived" of adequate medical care by the Defendants.  Barnes v. Ross, 926 F. Supp. 2d 499, 505 (S.D.N.Y. 2013) Plaintiff also does not disclose the treatment he received at Jamaica Hospital, or how Defendants' alleged deliberate indifference caused him to exacerbate "his physical and mental pain and suffering and injuries." (See Exhibit A at 10.)  The AC also fails to set forth the length of the supposed delay of medical

treatment. At bottom, the AC's factual allegations are not sufficient to demonstrate that Plaintiff was deprived of medically necessary treatment or that the risk of harm posed by any delay in medical care was sufficiently serious. <u>See, e.g., Feliciano,</u> 2017 U.S. Dist. LEXIS 47893, 2017 WL 1189747, at *11 ("There are . . . no allegations that his conditions were life-threatening and fast-degenerating, or that they worsened because of the delay, or that the delay was punitive. . . . [T]he Court concludes that any alleged delay was not serious enough to violate [Plaintiff's] constitutional rights."); <u>Gantt v. Horn,</u> No. 09 Civ. 7310 (PAE), 2013 U.S. Dist. LEXIS 32497, 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013) ("[Plaintiff] has not alleged that any delays in his treatment caused any symptoms of his underlying illnesses to worsen. . . . Furthermore, [plaintiff] has not alleged, beyond making conclusory claims, that any delay in treatment, or any inadequacy of such treatment, has put him at an 'unreasonable risk of future harm.' . . . The facts at hand fall far short of those in cases in which courts have found an objectively serious injury." (quoting <u>Smith,</u> 316 F.3d at 188)). Plaintiff does not set forth any facts that demonstrate the delay of medical care was excessive or treatment inadequate.

The threadbare factual allegations in the AC also do not demonstrate that any Defendant acted with "deliberate indifference" to Plaintiff's health. To satisfy the *mens rea* prong a plaintiff must show a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee, even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." <u>Darnell,</u> 849 F.3d at 35. "[R]ather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" <u>Lloyd,</u> 246 F. Supp. 3d at 719 (alteration in original) (quoting

<u>Darnell</u>, 849 F.3d at 33, 35.) The allegations in the AC state the defendants brought Plaintiff to Jamaica Hospital for medical treatment. (Exhibit A at 19.) There are no facts of any kind that show the officers withheld or delayed medical treatment for Plaintiff's alleged injuries. Absent factual allegations disclosing Plaintiff's preexisting medical condition, the length of the alleged delay in care, and the physical signs of medical distress Plaintiff exhibited, there is no basis to find that the Defendants "knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result [from the alleged delay in care]." <u>See Feliciano</u>, 2017 U.S. Dist. LEXIS 47893, 2017 WL 1189747, at *14. Therefore, Plaintiff fails to establish the *mens rea* prong of denial of medical care under the Fourteenth Amendment.

**B.     Notwithstanding Plaintiff's Beliefs to the Contrary, The AC Evidences that He Received Reasonable Medical Treatment on April 28, 2019.**

Plaintiff's denial of medical care relating to April 28, 2019, also fails as a matter of law. Here, Plaintiff alleges Officers Langenfeld and Rabin took him to see a nurse instead of a hospital doctor. (Exhibit A at 9.) Plaintiff asserts the "jailhouse nurse" was not qualified to treat his alleged condition. (<u>Id</u>.) If a plaintiff alleges that [defendants] provided inadequate care—rather than a failure to provide any treatment—the inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract[.]" <u>Smith</u>, 316 F.3d at 185 (citing <u>Chance v. Armstrong</u>, 143 F.3d 698, 702-03 (2d Cir. 1998)). Here, Plaintiff states that as a result of his inadequate treatment his blood sugar was out of control and that he was experiencing "serious pain and hunger." (Exhibit A at 6.) The AC does not specify the risk Plaintiff was facing besides the presence of pain as a result of the inadequate treatment. The AC also fails to set forth any facts explaining how the nurse's treatment was inadequate for Plaintiff's unexplained condition.

Plaintiff only asserts conclusory allegations describing a general assessment of inadequacy. Therefore, Plaintiff has not adequately plead a sufficiently serious risk of harm.

The AC also fails to allege which officer acted with deliberate indifference on April 28 incident. The AC does not state that Plaintiff informed either Officers Langenfeld or Rabin about his alleged medical condition or that they should have known about Plaintiff's purported medical condition. Plaintiff also fails to specify why he believes a hospital doctor would have been necessary to treat his condition. See Slade v. Corr. Health John Doe, 23 Civ. 1419 (LTS) 2023 U.S. Dist. LEXIS 42071, 2023 WL 2479793 at *6-7 (S.D.N.Y. Mar. 13, 2023) (Court found that Plaintiffs' allegation that defendant doctor leaving plaintiff in the care of a defendant nurse failed to state inadequate medical care claim against both defendants.); See Williams v. City of New York Dep't of Corr., 19 Civ. 9528 (ER) 2020 U.S. Dist. LEXIS 121455 2020 WL 3893929 (S.D.N.Y. July 10, 2020) (Court found that prison officers not taking plaintiff to a medical professional when he had an air pump to treat his asthma did not constitute deliberate indifference). By his own admission, Officers Langenfeld and Rabin transported Plaintiff to a medical professional. The fact that Plaintiff disagrees with the treatment is not sufficient to state a constitutional claim. Williams, 2020 U.S. Dist. LEXIS 121455 2020 WL 3893929 at *15 (quoting Rivera v. Doe, 16 Civ. 8809 (PAE) (BCM), 2018 U.S. Dist. LEXIS 31813, 2018 WL 1449538, at *11 (S.D.N.Y. Feb. 26, 2018)). Accordingly, Plaintiff's denial of medical care claim relating to April 28, 2019, is baseless and should be dismissed.

## POINT VI

## PLAINTIFF HAS FAILED TO PLEAD A MUNICIPAL LIABILITY CLAIM AND ALSO FAILS FOR LACK OF AN UNDERLYING CONSTITUTIONAL VIOLATION

Plaintiff has failed to allege a plausible municipal liability claim against the City of New York in the AC. As an initial matter, Plaintiff's claim fails for lack of an underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (When a plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be municipal liability) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). As discussed *supra* Point I-IV, Plaintiff's AC fails to allege any plausible claims against any of the defendants. However, even in the event that the Court determines otherwise, Plaintiff's municipal liability claim fails for several reasons.

In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). Plaintiff alleges the City of New York has a policy of accusing citizens of false charges and imprisoning them without probable cause. (See Exhibit A at 11.) Plaintiff further alleges this policy caused his injuries. (Id.)

In order for a plaintiff to satisfy the "policy or custom" prong required to establish municipal liability they must allege the existence of either, "(1) a formal policy, see Monell, supra, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91;

or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989). Plaintiff fails to allege a municipal liability claim under any of the prongs.

## A. Plaintiff Does Not Demonstrate a Practice So Persistent that it Constitutes a Custom or Usage.

Plaintiff has failed to state a claim against the City because he has not sufficiently alleged that he suffered a violation of his rights as a result of an official policy or custom. It is not enough for plaintiffs to offer "[t]hreadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." Iqbal, 556 U.S. at 678-79. In addition, the only specific allegations in the AC relate to purported harms that were caused by "non-policymaking municipal employees," (See Exhibit A at 11, 39-40, 42-43); Jones, 691 F.3d at 81. None of the facts alleged suggest that Plaintiff's arrest or prosecution reflected a "persistent and widespread [practices]," or that any "policymaking official ordered or ratified the [City] employee's actions—either expressly or tacitly," Palmer v. City of New York, 564 F Supp. 3d 221, 240 (E.D.N.Y. Sep. 30, 2021)

Plaintiff's attempt to remedy the lack of allegations by attaching news articles does not rescue his municipal liability claim. The AC includes several newspaper articles relating to non-party police officers and court officials, none of which have any connection to this case or Plaintiff's alleged municipal liability claim. (Exhibit A at 48-51.) The AC also fails to explain how Guyana's election stability is related to this case. (Id. at 51.) The articles do not make any connection to the allegations in this case or support the existence of a custom or practice that lead to Plaintiff's rights being violated. Because Plaintiff cannot allege a custom or practice out of disparate incidents his theory under Monell fails.

**B.      Plaintiff Does Not Plausibly Allege a Failure to Train.**

A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). "Deliberate indifference," as the Supreme Court cautioned, "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011). Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983." Id. ("municipality's culpability for a deprivation of rights is at its *most tenuous* where a claim turns on a failure to train") (*emphasis added*).

"[W]here a city has a training program, a plaintiff must . . . identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Wray, 490 F.3d at 196 (internal quotation marks and citations omitted). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

To succeed on a deliberate indifference theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." Connick, 563 U.S. at 61. With

21

respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees."  Id. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").  "[A] failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'"  Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds, at 192.)

Here, the AC is devoid of any allegations of specific deficiency in training or other similar constitutional violations by untrained employees that are "ordinarily necessary" to establish a claim for failure to train.  Rather, Plaintiff states in conclusory fashion that the City failed to train the officers and this caused the constitutional violations.  (See Exhibit A at 40.); Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000).  Plaintiff has only pointed to this specific instance and no other similar incidents to which a failure to train claim relies.  (See Exhibit A at 11.)  On Plaintiff's allegations alone, this purported municipal liability claim should be dismissed and the City should be dismissed from this case.

## POINT VII

## THE AMENDED COMPLAINT FAILS TO PLEAD A DENIAL OF RIGHT TO FAR TRIAL CLAIM

The AC contains virtually no factual detail to support a claim for denial of the right to a fair trial.  To establish such a claim, a plaintiff must demonstrate that an "(1) investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) [that] the plaintiff suffer[ed] a deprivation of liberty as a result."  Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012).

Plaintiff's denial of fair trial claim fails because he does not allege what evidence, if any, defendants fabricated.  Conclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial.  See Longo v. Ortiz, 15 Civ. 7716 (VEC), 2016 U.S. Dist. LEXIS 131558, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (holding that the plaintiff failed to state denial of fair trial claim where he alleged "he was denied the right to a fair trial . . . when the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements . . . to be used against [the plaintiff] at trial as well as to a Supreme Court judge in an effort to secure a search warrant, indictment and conviction")  The AC merely states the conclusory allegation that Officer Clemens "fabricated evidence, and Corruptly Presented a FALSE Claim in New York City Criminal Court in Queens to Cover for his Illegal and Unconstitutional FALSE Arrest of his Victim Mr. VIDYARTIE GANESH. (sic)"  (See Exhibit A at 18.)  Plaintiff does not set forth any facts supporting how the officers fabricated evidence that deprived him of his liberty.  Thus, the AC fails to state all of the elements of a claim for denial of right to a fair trial and should be dismissed.

## POINT VIII

## THE AMENDED COMPLAINT FAILS TO STATE A CONDITIONS OF CONFINEMENT CLAIM

The AC also fails to state a conditions of confinement violation claim under a claim of "Torture."[2]  Due to Plaintiff's pretrial status, Plaintiff's due process is governed under the Fourteenth Amendment rather than the Eighth Amendment as he alleges in the AC.  See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (noting that because a pretrial detainee is not being "punished," pretrial detainees in state custody are protected by the Due Process Clause of the

---

[2] Defendants construe Plaintiff's "Torture" claim as a conditions of confinement under the Fourteenth Amendment due to the vagueness of his pleading.

Fourteenth Amendment) (Exhibit A at 44.)  This standard requires a plaintiff to satisfy both an objective and a subjective prong.  See Darnell, 849 F.3d at 29.  The objective standard requires a "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[.]"  Id.  The subjective standard requires a "showing that the officer acted with at least deliberate indifference to the challenged conditions[,]" "acted intentionally[,]" or "recklessly failed to act with reasonable care."  Id. at 29, 35.  Plaintiff alleges he was kept in solitary confinement in a dirty jail cell but does not provide the identity of the officers who placed him in the cell.  (Exhibit A at 27.)  Plaintiff further fails to allege how long he was placed in confinement.  (Exhibit A at 27.)  The lack of factual specificity is fatal to the "objectively serious condition" prong under the Fourteenth Amendment.  See Rivera v. Molina, 23 Civ. 4128 (LTS) 2023 U.S. Dist. LEXIS 130887, 2023 WL 4847865 at *7-8 (S.D.N.Y. July 27, 2023) (Court found that plaintiff did not allege enough facts for condition of confinement when he failed to allege the duration of solitary confinement and the identity of the officers who placed him in solitary confinement).  Additionally, Plaintiff has failed to allege that the "Defendants knew of an excessive risk to his health or safety and deliberately disregarded it."  Dillon v. City of New York, No. 12 Civ. 7113 (LAP), 2013 U.S. Dist. LEXIS 183409, 2013 WL 6978959, at *4 (S.D.N.Y. Nov. 18, 2013).  Plaintiff's AC lacks sufficient facts necessary to plead a conditions of confinement claim.  Accordingly, this claim against the Defendants fails and should be dismissed.

POINT IX

**FAILURE TO INTERVENE CLAIM FAILS BECAUSE EACH DEFENDANT IS ALLEGED TO PARTICIPATE IN THE CONSTITUTIONAL VIOLATION.**

Plaintiff cannot allege a failure to intervene claim because he asserts that each of the officers directly participated in the constitutional violations.  To plead a failure to intervene claim,

a plaintiff must allege "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jackson v. Nassau Cty., 552 F. Supp. 3d 350, 383 (E.D.N.Y. July 28, 2021). However, courts in this Circuit will dismiss the failure to intervene claim when the complaint alleges all defendants participated in the constitutional violation. Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013) ("The Court has already concluded [that the two officers] both may be held liable under a theory of direct participation, therefore neither would be held liable for failure to intervene.") Additionally, courts will dismiss complaints when there are insufficient facts that the officer witnessed a plaintiff's rights being violated. Morgan v. County of Nassau, 720 F. Supp. 2d 229, 240 (E.D.N.Y. 2010) (Court found failure to state a claim against two defendants for failure to intervene, when one defendant was alleged to have used excessive force, and no facts suggested the other defendant observed the alleged use of force). In the present case, Plaintiff alleges that each officer participated in the alleged constitutional violations in the AC. (See generally Exhibit A.) Plaintiff also does not assert that any of the defendants witnessed the alleged constitutional violations and failed to intervene. Therefore, Plaintiff's failure to intervene claim should be dismissed.

## POINT X

### PLAINTIFF FAILS TO ALLEGE LABOR AKIN TO SLAVERY

Plaintiff purports a violation of the Thirteenth Amendment, which, prohibits slavery and involuntary servitude. This claim fails as a matter of law. In order to state a claim under the Thirteenth Amendment, "a plaintiff must demonstrate he has been subjected to 'compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable

results.'" <u>Ford v. Nassau County Exec.</u>, 41 F. Supp. 2d 392, 400-401 (E.D.N.Y. 1999). Second Circuit courts have found activities such as general housekeeping or participation in programs do not constitute labor akin to slavery. <u>See Muhmmaud v. Murphy</u>, 632 F. Supp. 2d 171, 176 (D. Conn. 2009). Here Plaintiff only alleges that the fact he placed in leg shackles as an akin comparison to slavery. (<u>See</u> Exhibit A at 22.) Plaintiff has alleged no facts that suggest he was subject to compulsory labor akin to slavery or that he was forced into any labor of any kind. Indeed, by bringing this claim in these terms, Plaintiff is "trivializ[ing] the pain and anguish that the Thirteenth Amendment sought to remedy." <u>Ford</u>, 41 F. Supp. 2d. at 400. Therefore Plaintiff's claim under the Thirteenth Amendment must be dismissed.

**POINT XI**

**THE AMENDED COMPLAINT FAILS TO ALLEGE PERSONAL INVOLVEMENT FOR SEVERAL DEFENDANTS**

**A.** **Plaintiff Cannot Establish Any Personal Involvement for Defendants McCormick and Simon.**

Personal involvement is a prerequisite to the assessment of damages in a § 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim." <u>Marhone v. Cassel</u>, 16 Civ. 4733 (NSR), 2022 U.S. Dist. LEXIS 173496, 2022 WL 4468056, at *4 (S.D.N.Y. Sept. 26, 2022) (citing <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)); see also <u>Randle v. Alexander</u>, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) ("It is axiomatic that individual defendants cannot be liable for § 1983 violations unless they are personally involved with the alleged conduct.") The Second Circuit has held that 'personal involvement' under § 1983 means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" <u>Busch v. Cnty. of Erie</u>, 20-CV-1515, 2022 U.S. Dist. LEXIS 83539, 2022 WL 1460022, at *4 (W.D.N.Y. May 9, 2022) (quoting <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996)). A defendant in a § 1983 action may not be held

liable merely because he holds a high position of authority. <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). Instead, "each Government official . . . is only liable for his . . . own misconduct." <u>Iqbal</u>, 556 U.S. at 677. Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." <u>McCoy v. Goord</u>, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (quotation marks and citations omitted).

Here, Plaintiff names Sergeant John McCormick and Lieutenant Simon as individual defendants but fails to set forth any specific allegations against either of these parties. Plaintiff only names both defendants as "supervisors" during the relevant time alleged in the Complaint. (<u>See</u> Exhibit A at 30.) These allegations are too generalized to serve as sufficient personal involvement. <u>Dunham v. City of New York</u>, 295 F. Supp. 3d 319, 331 (S.D.N.Y. Mar. 13, 2018). Plaintiff seems to be relying on a pure *respondent superior* theory of liability, which is insufficient to sustain a § 1983 claim seeking to impose supervisory liability. <u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003) ("Mere 'linkage in the . . . chain of command' is insufficient to implicate a [supervisory official in a § 1983 claim]") As a result, Plaintiff's allegations against Sergeant McCormick and Lieutenant Simon are insufficient to state personal involvement under § 1983 and should be dismissed.

**B.      Plaintiff Cannot Allege Personal Involvement for Officers Rabin and Langenfeld for Denial of Fair Trial Claim**

Plaintiff has shown no facts demonstrating Officer Rabin and Langenfeld's personal involvement in his fabrication of evidence claim. Personal involvement may be established by a showing of direct participation, that is, "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, "such as ordering or helping others

to do the unlawful acts." <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 155 (2d Cir, 2001).  The

Second Circuit has stated that personal involvement exists where

> "(1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference . . . by failing to act on information
> indicating that unconstitutional acts were occurring."

<u>Littlejohn v. City of New York</u>, 795 F.3d 297, 314 (2d Cir. 2015).  There are no facts in the AC

that tie Officers Langenfeld and Rabin to a fabrication of evidence claim under any of these prongs.

The AC conclusory states "Defendants were aware or should have been aware of falsity of the

information used to prosecute plaintiff."  (Exhibit A at 9.)  There is no mention of Officers

Langenfeld and Rabin becoming aware of the alleged fabrication through a report or subordinate.

Additionally the AC neglects to allege how Officers Langenfeld and Rabin knew an

unconstitutional act was occurring.  All the AC states is "By fabricating evidence, defendants

violated Plaintiff Ganesh's constitutional right to a fair trial" (<u>Id</u>. at 9.)  Plaintiff conclusory states

that Officer Langenfeld and Rabin knew of a constitutional violation and expects the Court to fill

in the gaps.  Plaintiff has not alleged personal involvement for this claim for Officer Rabin and

Langenfeld and the claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants City of New York, Officer William Clemens, Officer Patrick Fitzmaurice, Sergeant John McCormick, Lieutenant Darnell Simon, Officer Louis Rabin and Officer Brendan Langenfeld respectfully request that the Court dismiss the AC in its entirety pursuant to Rule 12(b)(6), with prejudice, together with such costs, fees, and other and further relief as the Court deems just and proper.

Dated:      New York, New York
             August 30, 2023

> MURIEL GOODE-TRUFANT
> Corporation Counsel of the
>   City of New York
> Attorney for Defendants *City, Clemens, Fitzmaurice, McCormick, Simon, Rabin, and Langenfeld*
> 100 Church Street
> New York, New York 10007
> (212) 356-2657
>
> By:   */s/ Joseph Zangrilli*
>       Joseph Zangrilli
>       Senior Counsel
>       *Special Federal Litigation Division*

Cc:    **BY FIRST CLASS MAIL**
      Vidyartie Ganesh
      191-11 Woodhall Avenue
      Apt. 1B
      Hollis, NY 11423
      929-304-4954
      Email: Vidyartie3725@gmail.com