UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VIDYARTIE GANESH,

Plaintiff,

-against-

NYPD POLICE OFFICER WILLIAM CLEMENS, *Shield # 27464*; POLICE OFFICER PATRICK FITZMAURICE, *Shield #11671*; POLICE OFFICER SGT JOHN MCCORMICK; POLICE OFFICER LT. SIMON; POLICE OFFICERS JOHN AND JANE DOES #1-3; JOHN AND JANE DOE STATE PROSECUTOR; DARA E. MCCANTS; THE CITY OF NEW YORK; HOME DEPOT, INC.; POLICE OFFICER DETECTIVE LOUIS RABIN; POLICE OFFICER BRENDAN LANGENFELD,

Defendants.

**MEMORANDUM & ORDER**
22-CV-2396 (NRM) (JRC)

**NINA R. MORRISON**, United States District Judge:

This case arises from *pro se* Plaintiff's arrest in April 2019 on charges of public lewdness that were ultimately dismissed. Plaintiff sued various New York Police Department ("NYPD") officers and the City of New York (the "City Defendants") for constitutional violations under 42 U.S.C. § 1983, including, *inter alia*, false arrest, excessive force, malicious prosecution, deliberate indifference, and unconstitutional conditions of confinement.

Before the Court is the City Defendants' motion for summary judgment. For the reasons explained below, the City Defendants' motion is granted, except with respect to Ganesh's excessive force claim based on his allegations of tight handcuffing, as the Court finds that there exist disputed issues of material fact with respect to that claim.

## BACKGROUND

The following facts are undisputed — having largely been recorded on contemporaneous body-worn camera ("BWC") footage, beginning from the time of Plaintiff's arrest and continuing through his ambulance ride to the hospital. Where disputed, the facts are resolved in Plaintiff's favor as the non-movant, and the Court further affords Plaintiff the benefit of all favorable inferences from those facts.[1]

On April 27, 2019, Plaintiff Vidyartie Ganesh was arrested at a Home Depot store in Queens, New York. *See* City Defs.' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1 Statement"), ECF No. 158 ¶¶ 3, 5, 8. His arrest followed a 911 call around 6:00 p.m., by witness Dara McCants, who called to report an

[1] The City Defendants have represented to the Court that they notified Ganesh of his obligations at the summary judgment phase of this litigation when they provided him with copies of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 — specifically, his obligation to submit "a correspondingly numbered paragraph responding to, each numbered paragraph" asserted in City Defendants' Rule 56.1 Statement. *See* ECF No. 157-1 at 4–6; *see also* Local Civ. R. 56.2. Plaintiff failed to submit such a statement in response to City Defendants' Rule 56.1 Statement. However, "Courts in this Circuit typically forgive a *pro se* plaintiff's failure to file a Local Rule 56.1 statement, and generally conduct their own independent review of the record." *Garan v. N.Y.-Presbyterian Hosp.*, No. 24-CV-06978 (JAV), 2026 WL 2137670, at *1 n.1 (S.D.N.Y. July 24, 2026) (quoting *Moore v. Shahine*, No. 18-CV-463 (AT) (KNF), 2021 WL 827694, at *4 (S.D.N.Y. Mar. 4, 2021), *aff'd*, No. 21-711-CV, 2022 WL 2118945 (2d Cir. June 13, 2022) (summary order)).

individual walking down Belknap Street, Queens, New York — first towards a school and then towards a Home Depot store — with his genitals exposed. *Id.* ¶¶ 3, 5; *see* Decl. of Seamus O'Connor in Support of Defs.' Mot. for Summ. J. ("O'Connor Decl.") Ex. D ("911 Call") at 00:05–00:57; ECF No. 159-3 at 2–3. She identified the individual as "wearing a brown leather jacket with a gray hoodie and sunglasses," and promised to "keep an eye on him" until the police could respond. *Id.* ¶¶ 4–6. Defendants NYPD Officers William Clemens and Patrick Fitzmaurice responded to McCants's 911 call and spoke with her briefly upon entering the Home Depot location. *Id.* ¶¶ 7–10; *see* O'Connor Decl. Ex. F ("Clemens BWC Footage") at 00:00–00:45.

The officers then moved towards an individual who matched the description McCants provided and eventually identified this person as Ganesh. *See* Clemens BWC Footage at 01:00–03:10. The officers then proceeded to handcuff Ganesh and inform him that someone reported him for exposing his genitals in public. *Id.* at 04:20–05:30. The officers escorted Ganesh outside the store and towards a police vehicle; while outside, Ganesh complained of feeling hot, and Officer Clemens patted down Ganesh's leg, groin, and upper thigh area and removed belongings from his pocket. *See id.* at 08:40–09:15; Defs.' 56.1 Statement ¶ 16. Ganesh also explained that he is diabetic, has several stents in his heart, and is blind in his right eye. Clemens BWC Footage at 10:15–10:36. As he sat down inside the police vehicle, Ganesh began crying and complaining of the tightness in his handcuffs, as well as of chest pain. *Id.* at 10:52–11:45, 12:15–12:25. Officer Clemens loosened Ganesh's handcuffs, as Ganesh sobbed and proclaimed his innocence. *See id.* at 12:30–13:55.

Before the officers drove Ganesh to the 113th Precinct, Officer Clemens approached another police vehicle and described the details of Ganesh's arrest, apparently to a superior officer. *See id.* at 14:20–15:35 (stating that Ganesh was arrested for indecent exposure, recounting how he spoke with McCants and identified Ganesh, and discussing Ganesh's medical issues). During the ride to the precinct, Ganesh repeatedly asked the officers why he was arrested and maintained his innocence; he also explained that he sometimes urinates himself as a diabetic, and told the officers that he was only pulling up his pants. *See id.* at 19:50–22:32. Ganesh also complained of chest pain towards the end of the car ride. *Id.* at 23:28–23:33; Defs.' 56.1 Statement ¶ 21.

Ganesh continued crying at the precinct and explained that he recently underwent heart surgery, while Officer Fitzmaurice searched him and removed belongings from his pockets. Clemens BWC Footage at 28:00–28:15. Again, he complained of chest pain and of pain from the tightness of his handcuffs, and another officer requested assistance from an emergency medical technician ("EMT") nearby. *See id.* at 28:25–28:40, 29:20–29:30. He winced in pain and slid towards the floor, as Officer Fitzmaurice counted the money he retrieved from Ganesh's person. *See id.* at 29:45–30:45.

Officers Fitzmaurice and Clemens then escorted Ganesh to a bench nearby, where he received medical assistance. *Id.* at 30:45–31:17. The EMT asked Ganesh for his medical history and his list of medications; Ganesh described his history of heart and eye surgeries, as well as with diabetes and hypertension. *See* O'Connor

Decl. Ex. G ("Fitzmaurice BWC Footage") at 31:15–32:20. The EMT measured Ganesh's blood pressure and gauged his symptoms; afterwards, Ganesh complained of a headache. *See id.* at 32:05–33:56.

After he answered the EMT's questions — including whether he knew his own name — and the EMT checked his pulse, Ganesh closed his eyes and became briefly unresponsive. *See id.* at 34:15–37:15. Once he opened his eyes, the EMT informed him that she would administer two chewable aspirin, which he consumed. *See id.* at 37:15–37:50. Additional EMT workers arrived and questioned Ganesh about his medical history; he grimaced and closed his eyes as he answered these questions. *See id.* at 37:55–38:20. A different EMT announced her intention to perform an electrocardiogram ("EKG") on Ganesh and measure his blood pressure but stated that she could only do so with him handcuffed to a stretcher. *See id.* at 38:20–39:20, 39:50–40:15. In response, Ganesh demanded a lawyer. *Id.* at 40:15–40:30. He was ultimately placed on a stretcher, to which his feet and his hand were handcuffed. *Id.* at 40:30–41:30. As the EMT measured his blood pressure on the stretcher, Ganesh again complained about the cuffs' tightness and asked Officer Fitzmaurice to loosen them — which he refused to do. *Id.* at 41:30–42:30.

The EMT observed that Ganesh's blood pressure level was "not bad" and that there was no elevation in his EKG results, as she and her colleague continued to inquire into Ganesh's medical history and medications. *Id.* at 43:20–43:30, 44:20–45:00, 46:45–47:10, 49:00–49:15. Ganesh agreed to go to the hospital, and the EMT repeatedly asked whether Ganesh could be handcuffed to both sides of the stretcher

while she measured his blood pressure; Officer Fitzmaurice refused the EMT's suggestion, and in passing mentioned that Ganesh would be issued a summons on his way to the hospital and could possibly be released. *See id.* at 49:20–49:30, 49:40–50:30, 50:35–50:50.

The EMT and her colleague continued to inquire into Ganesh's medical history, measured his blood sugar and blood pressure, and noted that his blood sugar was "a little high." *See id.* at 50:55–51:30, 51:40–52:05, 52:40–53:20, 53:40–53:50. As they prepared to transport him to the hospital, Officer Fitzmaurice cuffed Ganesh's hands behind his back and the EMTs strapped him into the stretcher. *See id.* at 54:50–56:20. This caused Ganesh to become agitated, cry out in pain, demand to know why he was being handcuffed, maintain his innocence, and insist that he speak to a lawyer and receive evidence. *Id.* at 54:50–58:10, 58:25–59:00. As he did so, Officer Fitzmaurice explained to Ganesh that he was under arrest for public lewdness, that he was being transported to the hospital for medical attention, and that "we have probable cause that you completed [*sic*] a crime." *Id.*

The stretcher jostled as the EMTs moved it inside the ambulance, causing Ganesh to scream in pain and begin sobbing again. *Id.* at 59:00–59:10. He repeatedly cried for help and yelled, "They're murdering me!" and "This is torture!" *Id.* at 59:10–1:01:00. The EMT again asked whether he could cuff Ganesh's hands to both sides of the stretcher (instead of behind his back) to monitor him through an EKG, but Officer Fitzmaurice refused. *See id.* at 59:25–59:55. The EMT expressed that she was having difficulty putting the pulse oximeter on his finger, to measure his oxygen saturation.

*See id.* at 1:00:30–1:00:40. Ganesh refused additional aspirin but accepted an oxygen mask (which he later asked to be removed); at this point, he confronted the EMT, announced that he would sue for "torture," and begged for the handcuffs to be removed — again, Officer Fitzmaurice refused. *See id.* at 1:02:20–1:03:45, 1:04:00–1:05:35.

During the ambulance ride to the hospital, Ganesh continued to complain about the tightness of his handcuffs, to protest what he described as his "torture" and "murder," to insist upon talking to a lawyer, and to challenge his arrest. He also exclaimed that he was "dying" from the pain caused by the handcuffs and his placement on the stretcher. *See id.* at 1:04:20–1:08:15, 1:08:45–1:10:45. The EMT administered supplemental oxygen through a nasal cannula. *See id.* at 1:06:55–1:07:15. At one point, Ganesh explained that he pulled down his pants because he was feeling dizzy and was urinating on himself. *Id.* at 1:10:45–1:11:00. He also complained that the handcuffs were "twisting" on his bone, at which point Officer Fitzmaurice not only did not loosen them, but stated that the handcuffs were "too loose" and told Ganesh that he would tighten them — to which Ganesh objected. *Id.* at 1:11:40–1:12:30.

Ganesh was admitted to Jamaica Hospital Medical Center at around 8:00 p.m.; he was discharged the following day, April 28, 2019, shortly before 7:30 a.m. ECF No. 159-8 at 3. He received 650 mg of Tylenol while he was admitted, and the attending physician observed reproducible chest pain during his physical examination of Ganesh, as well as an inconsistent patient history. *See id.* at 7, 14.

The doctor ultimately found no abnormalities in Ganesh's medical imaging or his lab results and concluded that he was suitable for discharge. *Id.* at 11.

On April 28, 2019 (*i.e.*, the day after his arrest, and the same day he was discharged from the hospital), Ganesh was arraigned on charges of public lewdness and exposure of a person, in violation of New York Penal Law sections 245.00 and 245.01, respectively. ECF No. 159-9 at 2. Afterwards, at around 11:00 a.m., Officers Langenfeld and Rabin escorted Ganesh to Central Booking, where he complained of pain and discomfort in his handcuffs and requested hospital treatment. Defs.' 56.1 Statement ¶¶ 34–35; Pl.'s Dep. Tr., ECF No. 159-10 194:10–23, 198:1–7, 199:2–8, 200:2–8.[2] He was seen by a nurse at Central Booking, who checked his blood sugar and remarked that it was high. Defs.' 56.1 Statement ¶¶ 36, 38; Pl.'s Dep. Tr. 199:9–16, 201:9–13. In his deposition, Ganesh stated that he was not provided food or insulin and that he was placed in solitary confinement. *See* Pl.'s Dep. Tr. 200:18–22, 201:18–25.

McCants signed a deposition in support of Ganesh's prosecution on May 16, 2019, but the District Attorney was "unable to follow up with" McCants thereafter. ECF No. 159-12 at 3; Defs.' 56.1 Statement ¶¶ 40–41. All charges against Ganesh were dismissed on July 11, 2019. Defs.' 56.1 Statement ¶ 42.

## PROCEDURAL POSTURE

[2] Pincites to Ganesh's deposition testimony reference internal pagination used within the transcript.

Ganesh initiated this action on April 26, 2022, bringing claims under 42 U.S.C. § 1983 for false arrest, excessive force, malicious prosecution, denial of a fair trial, failure to intervene, denial of medical treatment, and due process violations (along with separate claims he characterized as "modern day slavery" and "torture" that appear to be based on the same factual allegations as the above claims). *See generally* Compl., ECF No. 1. He brought these claims against all Defendants except Defendant Police Officers Brendan Langenfeld and Louis Rabin.[3] *Id.* at 1. On November 3, 2022, Defendant City of New York moved to dismiss the complaint, or alternatively, to consolidate the instant action with *Ganesh v. City of New York*, No. 20-CV-3528 (NRM) (JRC), which was filed on July 24, 2020, against Defendants City of New York, Officer Fitzmaurice, and Officer Clemens. ECF No. 11. The Legal Aid Society ("Legal Aid") — named in the original complaint — also proposed a briefing schedule for its anticipated motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 16. The Court adopted Legal Aid's briefing schedule on November 16, 2022, *see* ECF No. 18, and granted the consolidation motion on December 16, 2022, *see* Dkt. Order dated Dec. 16, 2022.

Legal Aid filed its motion to dismiss on December 5, 2022. ECF No. 19. The Court granted Legal Aid's motion on July 3, 2023, after Ganesh failed to oppose it. ECF No. 61; *see* ECF No. 35; Dkt. Order dated Mar. 2, 2023.

---

[3] Ganesh named Rabin as a detective in his Amended Complaint, but the City Defendants refer to him as an officer in their briefing.

On December 20, 2022, Ganesh filed an interlocutory appeal challenging the Court's decision to adopt the motion briefing schedule. ECF No. 24. Ganesh's appeal was dismissed on July 12, 2023, to pay the filing fee or proceed *in forma pauperis* ("IFP"). ECF No. 62. He filed another appeal — this time, challenging the Court's grant of Legal Aid's motion to dismiss — on August 3, 2023, along with an IFP motion and a motion for extension of time to file his appeal. ECF Nos. 64–66. The Court denied both motions as untimely, pursuant to Fed. R. App. P. 4(1)(A), and the IFP motion specifically as frivolous. *See* Dkt. Order dated Sep. 17, 2023. The Second Circuit dismissed his second appeal on November 6, 2023. ECF No. 72.

On March 18, 2024, Ganesh moved for sanctions against Defendants, pursuant to Fed. R. Civ. P. 37; NYPD Defendants along with the City of New York ("City Defendants") replied in opposition on March 29, 2024. ECF Nos. 86, 88. On referral by this Court, Magistrate Judge James R. Cho denied the motion on April 16, 2024. Min. Entry dated Apr. 16, 2024.

Ganesh filed a motion to amend his complaint on May 30, 2024, proposing a new complaint that would additionally name Officers Langenfeld and Rabin. *See* ECF No. 97 at 1; Dkt. Order dated June 24, 2024 (construing the amended complaint as a motion to amend). On June 13, 2024, City Defendants opposed the motion, arguing that claims against Officers Langenfeld and Rabin were time-barred and that Ganesh had failed to state a claim against them. ECF No. 100 at 1–3. Magistrate Judge Cho granted the motion to amend on July 24, 2024, and Ganesh filed his Amended Complaint on August 8, 2024. Min. Entry dated July 24, 2024; Am. Compl.,

ECF No. 109. He brought claims for denial of a fair trial; false arrest and false imprisonment; delay and denial of medical treatment and failure to protect; and municipal liability. *See id.* at 9–11. The allegations also relate to Ganesh's claims of excessive force, malicious prosecution, unlawful search and seizure, deliberate indifference, torture, and cruel and unusual punishment. *See generally id.*

The City Defendants served their motion to dismiss the Amended Complaint on Ganesh on August 30, 2024, ECF No. 132, and filed the fully-bundled motion on the docket on December 5, 2024, ECF Nos. 133–34. On September 25, 2025, however, in light of ongoing discovery, the City Defendants withdrew their motion to dismiss without prejudice, in anticipation of a fully dispositive summary judgment motion; they also asked the Court to schedule a settlement conference. ECF No. 148. Magistrate Judge Cho held a settlement conference on October 30, 2025, during which he certified discovery as closed and set a schedule for summary judgment briefing. *See* Min. Entry dated Oct. 30, 2025. The City Defendants filed the fully-briefed, instant summary judgment motion on March 19, 2026.

## **LEGAL STANDARD**

To survive a summary judgment motion, the moving party must demonstrate that "there is no genuine dispute as to any material fact," entitling the movant "to judgment as a matter of law." Fed. R. Civ. P. 56(a). There exists "[a] dispute about a 'genuine issue' . . . where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 378 (S.D.N.Y. 2020) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir.

2008)). The burden is on the moving party to demonstrate the absence of a genuine dispute of material fact; however, this burden can be met by pointing to a lack of evidence supporting the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In evaluating the motion, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Dufort v. City of New York*, 874 F.3d 338, 347 (2d Cir. 2017) (quoting *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016)). However, "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Palacios v. City of New York*, No. 15-CV-386 (PAE), 2017 WL 4011349, at *5 (S.D.N.Y. Sep. 11, 2017) (quoting *Hicks v. Baines*, 593 F.3d 159,166 (2d Cir. 2010)).

In response to a summary judgment motion, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Benjamin v. 69th Command of the NYPD*, No. 23-CV-2643 (LDH) (LKE), 2025 WL 2782503, at *2 (E.D.N.Y. Sep. 30, 2025) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). This relaxed standard does not "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *Jorgensen v. Epic/Sony Recs.*, No. 00-CV-181 (JFK), 2002 WL 31119377, at *2 (S.D.N.Y. Sep. 24, 2002)).

## DISCUSSION

### A. False Arrest

1. Applicable Law

*a. Probable Cause*

To bring a false arrest claim under § 1983, "a plaintiff must show that the defendant intentionally confined him without his consent and without justification." *Jin v. City of New York*, 169 F.4th 373, 380 (2d Cir. 2026) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). Such a claim is derived from the Fourth Amendment right to be free from unreasonable search and seizure.[4] *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). However, "[t]here can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff because 'probable cause to arrest constitutes justification.'" *Jin*, 169 F.4th at 380 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) ("[A]n act of confinement is privileged if it stems from a lawful arrest supported by probable cause." (quoting *Lourdes Torres v. Jones*, 47 N.E.3d 747, 759 (N.Y. Ct. App. 2016))).

Probable cause exists when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested

[4] To the extent that Ganesh asserts a § 1983 claim for illegal search and seizure due to his warrantless arrest, this claim fails to survive summary judgment if probable cause existed for his arrest. *See Davis v. Gantt*, No. 18-CV-303 (PKC) (AYS), 2024 WL 4132372, at *3 n.6 (E.D.N.Y. Sep. 10, 2024) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

has committed or is committing a crime." *Sacaza v. City of New York*, 169 F.4th 363, 370 (2d Cir. 2026) (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022). The court must consider "the totality of the circumstances, reviewing plainly exculpatory evidence alongside inculpatory evidence to ensure [it] has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Id.* Probable cause "must be justified by a belief of guilt that is particularized with respect to the person to be searched or seized." *Dufort*, 874 F.3d at 348 (citation modified).

A law enforcement officer has probable cause for arrest when they have "received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity. The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors." *Jin*, 169 F.4th at 380 (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)). An officer can corroborate the veracity of a victim or eyewitness account using factors such as "(1) observations of the putative victim's physical injuries, (2) the level of detail and consistency in the [eyewitness's] description of events, (3) the [eyewitness's] identification of the plaintiff by name and physical description, and (4) incriminating statements by the plaintiff." *See Powar v. City of New York*, No. 14-CV-4053 (KAM) (RER), 2016 WL 8711092, at *8 (E.D.N.Y. Sep. 30, 2016) (citation modified).

b. *Qualified Immunity*

Even if an officer lacked probable cause to arrest a plaintiff, the officer may be entitled to qualified immunity, which protects law enforcement from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Russell v. Scott*, 170 F.4th 83, 93 (2d Cir. 2026) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[T]he right to be free from arrest without probable cause [is] clearly established." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). However, even where a court may find that probable cause was lacking, in a civil action under § 1983, an arresting officer is entitled to qualified immunity if the officer had "arguable probable cause" to believe the person committed a crime — in other words, "if the undisputed facts and all permissible inferences favorable to the plaintiff show that officers of reasonable competence could disagree on whether the probable cause test was met." *Jin*, 169 F.4th 379–80 (quoting *McClellan v. Smith*, 439 F.3d 137, 147–48 (2d Cir. 2006)) (citation modified).

2. Analysis

Officer Clemens and Fitzmaurice had at least arguable probable cause, if not actual probable cause, to arrest Ganesh on April 27, 2019. They responded to a 911 call by McCants, who reported witnessing Ganesh with his genitals exposed. Defs.' 56.1 Statement ¶¶ 3, 7. There was no reason for them to doubt the reliability or veracity of her account: she provided a specific and accurate description of Ganesh's appearance, his location, and his movements, and specifically described him as walking near a school and then towards a Home Depot store with his genitals

exposed. 911 Call at 00:10–00:40, 00:54–01:10. The officers stopped Ganesh after McCants gestured and pointed in his direction, *see* Clemens BWC Footage at 00:18–00:35, and Ganesh matched the description she provided.

It is true that Ganesh has presented evidence (through the sworn account provided at his deposition) that after he was placed under arrest, he disputed McGants's account in part — and specifically explained to the officers that he has diabetes, which at times caused him to urinate on himself; he also told the officers that he was "pulling up his pants" while he was in the locations described by the 911 caller. *See id.* at 19:50–22:32. However, the officers were not "required to explore and eliminate every theoretically plausible claim of innocence before making an arrest" based on probable cause. *See Scott v. City of New York*, 812 F. Supp. 3d 270, 274 (E.D.N.Y. 2025) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)). And here, though Ganesh provided a possible medical explanation for why his genitals were exposed in public, he did not appear to dispute the fact that they were, in fact, exposed at the time the eyewitness reported his movements in public, including near a school. Thus, the officers likely had probable cause to arrest Ganesh as a matter of law.

At minimum, however, the officers are entitled to qualified immunity because their decision to take him into custody was objectively reasonable based on the information known to them, since they had at least arguable probable cause to believe that he had unlawfully engaged in public lewdness and indecent exposure. Officer Clemens spoke with multiple different officers and relied on eyewitness McCants'

account of Ganesh's behavior, as well as the circumstances she described that led up to his arrest. *See* Clemens BWC Footage at 14:25–15:30, 15:40–16:20. And because Ganesh did not himself dispute that he may have been walking in public with his genitals exposed, even if briefly, Officer Clemens clearly had arguable probable cause to arrest and charge him at that time.

**B. Malicious Prosecution**

"To prevail on a malicious-prosecution claim under section 1983, a plaintiff must establish (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, (4) actual malice, and (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Cagan v. Inc. Vill. of Freeport*, No. 22-CV-0260 (SJB) (LGD), 2026 WL 1878478, at *10 (E.D.N.Y. June 30, 2026) (quoting *Stollman v. Williams*, No. 23-7610, 2025 WL 2784215, at *4 (2d Cir. Sep. 30, 2025) (summary order) (citation modified)).

Probable cause is a "complete defense" to a malicious prosecution claim, as it is to a claim for false arrest. *See McDay v. City of New York*, No. 25-CV-2265 (JPO), 2026 WL 554746, at *4 (S.D.N.Y. Feb. 27, 2026) (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020)). In the malicious prosecution context, "the determination of probable cause is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Id.* "Where officers have probable cause for an arrest, they will also have probable

cause to prosecute, unless new facts emerge after the arrest, but before the prosecution, that demonstrate the charges are groundless." *Wekenmann v. Biegasiewicz*, No. 24-CV-1181, 2025 WL 831201, at *4 (2d Cir. Mar. 17, 2025) (summary order); *see Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 524 (E.D.N.Y. 2021). Qualified immunity also exists in defense of malicious prosecution claim, where officers have "arguable probable cause at the time the prosecution [is] initiated." *Cagan*, 2026 WL 1878478, at *10.

Probable cause existed to prosecute Ganesh at the time of his arraignment. The criminal complaint used to charge Ganesh included sworn statements by Officer Clemens, who stated that the 911 caller, McCants, had personally observed Ganesh "expos[ing] his naked penis, and manipulat[ing] it in a public place, open to public view." ECF No. 159-9 at 2. McCants' report provided probable cause to bring charges against him for public lewdness and exposure of a person. *See Lenzo v. City of New York*, No. 21-CV-306 (JMF), 2022 WL 656831, at *2 (S.D.N.Y. Mar. 4, 2022).

While it is true that Officers Clemens nor Fitzmaurice had further interactions with McGants between his arrest on August 27 and his arraignment on August 28, the new information Ganesh provided to them did not make the charges against Ganesh "groundless." While Ganesh explained that he may have been adjusting his pants because he tends to urinate on himself, and he describes McCants as a "false witness" in his summary judgment opposition, *see* ECF No. 162 at 3, these statements do not provide exculpatory evidence regarding Ganesh's actual behavior around the time McCants called 911 — nor do they offer non-conclusory reasons to doubt

McCants' veracity. Generously construing Ganesh's claims, it may be that he contends that McCants was mistaken in her account, *i.e.,* that she saw him "adjusting" his pants but inaccurately reported it to the 911 dispatchers and responding officers as an extended and intentional exposure of his genitals. But that does not mean that the officers who swore out the criminal complaint against him were not entitled to credit her McCants' very different account of what she observed. Accordingly, because they had probable cause to prosecute Ganesh for the charged crimes, summary judgment is granted on this claim.

**C. Excessive Force**

> [A] claim of excessive force under the Fourth Amendment is analyzed under a standard of 'objective reasonableness' . . . [which] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Matusak v. Daminski*, 165 F.4th 702, 713 (2d Cir. 2026) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "[T]o support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force." *Dockery v. Markell*, No. 23-CV-3302 (DG) (SDE), 2026 WL 2030042, at *10 (E.D.N.Y. June 8, 2026) (citations omitted). Determining the reasonableness of an officer's use of force also involves considering "the history of the interaction, as well as other past circumstances known to the officer," but doing so "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Evans v. City of Utica*, No. 23-CV-1210 (ECC) (MJK), 2026 WL 879425, at *8

(N.D.N.Y. Mar. 31, 2026) (quoting *Barnes v. Felix*, 605 U.S. 73, 80–81 (2025) and *Graham*, 490 U.S. at 396).

For the most part, Ganesh has not offered facts from which a jury could find that any of the NYPD officers he encountered used more than *de minimis* force against him. Ganesh complied with Officer Clemens' instructions to turn around and place his hands behind his back, and the officers escorted Ganesh from the store, to the police vehicle, and ultimately the police precinct. *See* Clemens BWC Footage at 04:20–04:50; Fitzmaurice BWC Footage at 06:50–07:45, 24:50–25:40. Furthermore, Ganesh's deposition testimony offers no basis to infer that NYPD officers used excessive force when transporting him to and from Central Booking.

However, this does not end the inquiry. An excessive force claim can be supported by allegations of "unreasonableness of handcuffing," which Ganesh has raised here. *Dockery*, 2026 WL 2030042, at *10. In evaluating whether a plaintiff has sufficient evidence to proceed to trial on a tight-handcuffing claim, courts consider whether a jury could reasonably find that "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id.* (quoting *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 638 (S.D.N.Y. 2020) (citation modified)). And while the injury requirement is "particularly important,'" *id.*, it remains but one factor for the Court to consider.

The central question in an excessive force claim based on tight handcuffing is "whether an officer reasonably should have known during handcuffing that his use of

force was excessive." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021) (quoting *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019)). "While the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and potential damages from any misconduct, a district court should not grant summary judgment on this basis alone." *Id.* at 151. Thus, a handcuffing claim may survive summary judgment "if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *See Cugini*, 941 F.3d at 608; *Jimenez ex rel. J.M. v. Cnty. of Suffolk*, No. 23-CV-9476 (AMD) (RLM), 2025 WL 948348, at *14–15 (E.D.N.Y. Mar. 28, 2025) (finding that plaintiffs plausibly alleged excessive force after being handcuffed for over three hours, complaining to officers of tight handcuffs, and officers refusing to loosen them); *Piatetsky v. Port Auth. of N.Y. & N.J.*, No. 24-CV-9136 (CM), 2026 WL 1399468, at *12 (S.D.N.Y. May 19, 2026) ("There is no '*de minimis* injury' exception to the excessive force doctrine . . . . It is the force used, not the injuries caused, which must be determined to be *de minimis* as a matter of law." (citation modified)).

On this record, there exists a genuine dispute of material fact as to whether the individual officer defendants used excessive force in this way. Ganesh testified that he repeatedly complained about the tightness in his handcuffs, beginning shortly after his arrest until he arrived at the hospital for treatment. Pl.'s Dep. Tr. 199:17–25, 200:1–8. The Court also has the benefit of contemporaneous body camera footage,

in which Ganesh can be heard crying in pain about the tightness of the handcuffs — with such outcries occurring from the time of his arrest, to his time at the 113th Precinct, and throughout the ambulance ride to Jamaica Hospital. Clemens BWC Footage at 10:52–11:45, 29:20–29:30; Fitzmaurice BWC Footage at 41:30–42:30, 1:04:20–1:08:15. At one point, he even stated that the handcuffs were "twisting" on his bone, and in response, Officer Fitzmaurice proceeded to *tighten* them, after telling Ganesh that they were "too loose." Fitzmaurice BWC Footage at 1:11:40–1:12:30. He also complained about pain from excessively tight handcuffs while he was being transported to Central Booking and escorted by Officers Langenfeld and Rabin. *See* Pl.'s Dep. Tr. 200:2–8.

This record provides sufficient evidence for a jury to conclude that the force used in Ganesh's handcuffing was excessive — and that the individual NYPD officer defendants were or should have been aware of that fact. While a jury may find that their handcuffing of Ganesh was reasonable under the circumstances, that is not a question for this Court to resolve at summary judgment. Thus, summary judgment is denied with respect to Ganesh's excessive force claim based on tight handcuffing.

**D. Denial of Medical Treatment**

Ganesh's Amended Complaint includes a cause of action for delay and denial of medical treatment, which this Court construes as a deliberate indifference claim. *See* Am. Compl. ¶¶ 48–51; *Dockery*, 2026 WL 2030042, at *12 ("Government officials may be liable for violating a pre-trial detainee's due process rights 'if the official

denied treatment needed to remedy a serious medical condition and did so because of deliberate indifference to the medical need.'" (citation omitted)).

To establish a deliberate indifference claim, "the plaintiff must satisfy [an] 'objective prong' by showing a sufficiently serious need. Second, the plaintiff must meet [a] 'subjective prong' which requires the officer to have acted with 'deliberate indifference' to the challenged condition." *Yancey v. Robertson*, 828 F. App'x 801, 803 (2d Cir. 2020) (summary order) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

With respect to the objective prong, the plaintiff's medical need must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Josie*, 2023 WL 3765063, at *9 (quoting *Hill v. Curcione*, 657 F. Supp. 3d 116, 122 (2d Cir. 2011)). "[R]elevant factors for this inquiry include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (citation modified) (quoting *Rodriguez v. Corazon Health Care*, No. 15-CV-5251 (GBD) (GWG), 2016 WL 3766397, at *2 (S.D.N.Y. July 11, 2016)).

As to the subjective prong, the official must have "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Dockery*, 2026 WL 2030042, at *13 (quoting *Sherrod v. Mutarelli*,

20-CV-03312, 2023 WL 2481030, at *8 (E.D.N.Y. Feb. 1, 2023)). "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).

Ganesh's deliberate indifference claim satisfies the objective prong. With his history of diabetes, hypertension, and heart surgery, he showed a "sufficiently serious" need of medical attention when he began complaining of chest pain. But his claim fails on the subjective prong, because there is no evidence that his chest pain resulted from any reckless conduct on the part of Officer Fitzmaurice or Officer Clemens, nor that any NYPD officers "failed to act with reasonable care" to mitigate the situation. Ganesh began complaining of chest pain in the Home Depot parking lot; he was examined by EMTs roughly twenty minutes after (shortly upon arriving at the precinct), and he arrived at the hospital about fifteen minutes after he left the precinct. *See* Fitzmaurice BWC Footage at 12:15–12:20, 25:00–31:20; ECF No. 159-5 at 4. Similarly, Ganesh was treated by a nurse at Central Booking after being transported from the 113th Precinct — both in Queens. *See* Pl.'s Dep. Tr. 194:10–23, 199:9–16. At no point was Ganesh denied medical attention, and any delays appear to be attributable time needed to transport Ganesh for booking and processing. Thus, there is insufficient evidence to support the subjective prong of Ganesh's deliberate indifference claim, and the City Defendants are entitled to summary judgment as a result.

**E. Denial of Right to Fair Trial**

A § 1983 claim for denial of a fair trial exists where a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Dowling v. City of New York*, No. 11-CV-4954 (NGG) (RML), 2013 WL 5502867, at *6 (E.D.N.Y. Sep. 30, 2013) (citation modified) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). The right to a fair trial can be violated even where no trial takes place, so long as the plaintiff suffers a deprivation of liberty as a result of the officer's fabrication. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 446 (E.D.N.Y. 2015). "Courts have held that being held at Central Booking and having to make subsequent court appearances . . . is sufficient to establish a deprivation of liberty." *Josie*, 2023 WL 3765063, at *6.

There is no evidence in the record to suggest that Officer Clemens fabricated evidence against Ganesh, as he alleges. *See* Am. Compl. ¶ 34. Under oath, Officer Clemens stated that McCants reported having personally witnessed Ganesh "expose his naked penis and manipulate it in a public place." ECF No. 159-9 at 2. This is consistent with her 911 call, in which she reports seeing a man "with his penis out" walking down Belknap Street and that he was "exposing himself to everyone." *See* 911 Call at 00:05–00:10, 01:00–01:20. Because there is no evidence that Officer Clemens or any other officer fabricated evidence against Ganesh, the City Defendants are entitled to summary judgment with respect to the denial of a fair trial claim.

**F. Cruel and Unusual Punishment**

Ganesh brings claims for unconstitutional conditions of confinement, based on his alleged "torture," "starvation," "extreme suffering," "cruelty," and for being placed

in a "dirty, nasty, and dangerous jail cell." *See* Am. Compl. ¶ 26. Like with a deliberate indifference claim, a plaintiff may challenge conditions of confinement by satisfying "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. "[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citations omitted). Furthermore, with respect to the subjective prong:

> [T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Id.* at 35.

At his deposition, Ganesh testified that he was not provided with food or insulin, despite being a diabetic. *See* Pl.'s Dep. Tr. 201:9–25; *cf.* ECF No. 159-8 at 26. There is also evidence that Ganesh's blood sugar was high on August 27, 2019, while he was at the 113th Precinct, as well as the following day, while he was at Central Booking. *See* Fitzmaurice BWC Footage at 52:40–53:20; Pl.'s Dep. Tr. 201:9–13. Ganesh claims that from the time of his arrest around 6:30 p.m. on August 27, until at least 11:00 a.m. on August 28 — an almost eighteen-hour period — he went without food or insulin. *See* ECF No. 159-5 at 3; Pl.'s Dep. Tr. 201:9–25. As this kind of

deprivation could have posed a serious risk to Ganesh's health, there is at least a genuine dispute of material fact regarding the objective prong of his conditions of confinement claim.

However, there is no evidence from which a reasonable jury could find that NYPD officers were deliberately indifferent to his condition. Ganesh spent most of the aforementioned eighteen-hour period at Jamaica Hospital, from around 8:00 p.m. on August 27 to 7:30 a.m. on August 28. *See* ECF No. 159-8 at 3. Officer Fitzmaurice was with Ganesh until around midnight, when he was relieved by an unnamed officer. Defs.' 56.1 Statement ¶ 28. Officers Langenfeld and Rabin transported him to Central Booking around 11:00 a.m. on August 28. *Id.* ¶ 34. There is no evidence that any of these officers were aware of the hunger Ganesh was experiencing, nor that he may have required insulin.

The same is true with respect to Ganesh's conditions of confinement claims based on his placement in solitary confinement. He stated that he was placed in solitary confinement after returning to the 113th Precinct from Central Booking. *See* Pl.'s Dep. Tr. 200:18–25. Even assuming, *arguendo*, that Officers Langenfeld and Rabin were the ones who placed him in solitary confinement, there is no evidence from which a jury could find that the conditions in that cell fell below the constitutional minimum. Ganesh does make general assertions that he was placed in a "dirty, nasty, and dangerous jail cell," *see* Am. Compl. ¶ 26, but he has not provided any facts to support his general conclusions that the placement amounted to conditions below what the constitution requires for arrestees who are briefly

detained. Nor has he presented any facts from which a jury could find that the cell in which he was placed by himself for that brief period of time was "dangerous" or otherwise "posed an excessive risk to [his] health or safety." Thus, the City Defendants are entitled to summary judgment on Ganesh's claim that he was subjected to unconstitutional conditions of confinement following his arrest.

**G. Additional Claims**

Ganesh brings a claim for municipal liability, and construed liberally, he alleges that officers failed to intervene in his constitutional deprivations. *See* Am. Compl. ¶¶ 51–56. Because both of these claims require evidence of an underlying constitutional violation — and such evidence is lacking here — the City Defendants are entitled to summary judgment with respect to both claims. *See Falu v. Cnty. of Orange*, 814 F. App'x 655, 658 (2d Cir. 2020) ("A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by governmental custom, policy, or usage of the municipality." (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014))); *see also Moroughan*, 514 F. Supp. 3d at 521 n.22 ("A 'failure to intervene' cause of action does not itself state a separate constitutional violation." (citation modified) (quoting *Hickey v. City of New York*, No. 01-CV-6506 (GEL), 2004 WL 2724079, at *16 (S.D.N.Y. Nov. 29, 2004)).

**<u>CONCLUSION</u>**

For the foregoing reasons, City Defendants' motion for summary judgment is granted, except with respect to Ganesh's excessive force claim based on tight handcuffing, on which summary judgment is denied.

**SO ORDERED.**

*/s/ Nina R. Morrison*
Nina R. Morrison
United States District Judge

Dated: October 22, 2026
Brooklyn, New York